Argument not to exceed 15 minutes was denied. Mr. Weiss, you may proceed for the appellant. Good morning. May it please the Court, Arthur Weiss, on behalf of the U.S. Supreme Court, on behalf of the defendant appellant, Hussein Nazzal, I'd respectfully like to reserve three minutes for rebuttal, if I may. Okay. Mr. Nazzal appeals of right a award of restitution, emanating from his plea of guilty to one count of conspiracy to defraud the United States government, 18 U.S.C., section 371. After a hearing, Judge Battani issued an order, which in part indicated that, during Mr. Nazzal's plea colloquy, he did not admit to allegations of abuse regarding either Z.C. or H.M., does not mention either of them, or admit to abuse of means to prevent them from cooperating with the authorities. In reading Nazzal's statement, the Court cannot find the scope of the offense of conviction in this case includes the abuse alleged by them. It is devoid of any overt acts involving abuse towards anyone, victim or otherwise, to further the conspiracy. And accordingly, the Court concluded that restitution pursuant to the Mandatory Victims' Rights Act was not appropriate. The Court, however, then went on and found restitution was appropriate under the Victim and Witness Protection Act. It is our position that the definitions of victim in both enactments are identical for purposes of this appeal, and that the initial determination should control the latter determination. In looking as to the propriety of whether restitution should be opposed, this Court, previously in McNulty, indicated that you look to the offense of conviction, since there was no plea agreement, the offense of conviction based solely on the facts admitted by the defendant, and whether the harm directly and proximately caused to the alleged victim was caused by that federal offense. The type of damages that are alleged by Z.C. and H.M. are not normally associated with defrauding the government. The indictment alleged in the facts that the plea indicated that Mr. Nazzal admitted to arranging a false marriage, not even the one involving Z.C. Counsel, just so I'm clear, you're arguing now that your client, or the person that your client is owing restitution to, was not a victim. That is correct. The opposing counsel argues that that was waived, or at least forfeited. How do you respond to that? They do argue that, right? They absolutely do. How do you respond to that? In a letter dated September 19, 2013, defense counsel at the time listed a number of objections that were submitted to the probation department. Those objections were incorporated in an addendum to the pre-sentence report. At the time of sentencing, apparently there was an off-the-record discussion, or something transpired off the record, because when Judge Battani took the bench, she inquired whether or not the objections had been waived. Mr. Fishman indicated that they had been and was only asking for a guideline sentence, and then a restitution hearing was set. It is my position, and I believe the position of defense counsel and Mr. Nazzal, that that waiver only applied to the guideline calculations, and the bases for that are in terms of what transpired subsequent to that colloquy or discussion between the court. The government submitted memoranda indicating that they were victims, in fact cited the Senga case to demonstrate that individuals such as Z.C. and H.M. could be victims. Mr. Morgan, on behalf of Mr. Nazzal, filed a lengthy memorandum indicating that they were not victims and cited a number of instances as to why they should not be, including the bases that are presently argued before my appeal. And I think the ultimate determination is that that was articulated by Judge Battani when she says in her memorandum in order, Nazzal argues that mandatory restitution is inappropriate because the statute does not apply to the offense to which he pled guilty. In addition, he claims discretionary restitution is inappropriate because the conduct for which the victim seek damages does not form the basis of conviction. So with due respect, no one reasonably concluded that the statement... Last one again because I'm not sure that means you're not a victim. In addition, he claims discretionary restitution is inappropriate because the conduct for which the victim seek damages does not form the basis of his conviction. And the sentence before that argues... You could have that and still have somebody... When the judge... Excuse me, I didn't mean to interrupt you. You could have that and still have a person not be a victim, couldn't you? I'm sorry? Still be a victim, couldn't you, even though the activity was not one of the elements of the crime? It's like if you rob a bank and then in the getaway, which is, you know, you don't need to have a getaway in order to be convicted for robbing a bank, you run over somebody, that would be a victim, wouldn't it? I believe in order to be a victim under the statute, that individual or entity has to be harmed by the offense of conviction and... Right, that's what I'm saying. You could be harmed by the offense of conviction without having that harm be an element of the conviction or not. I'm not sure that one flows from the other. Well, Judge Battani was very, very specific about that in her order. She said it was exactly along the lines Judge Rogers suggests. She says that she couldn't order mandatory restitution under the, whatever that statute's called, the Mandatory Victim Rights Act, but she can award discretionary restitution under the Victim Witness Protection Act, and she's clear about why she can't do it. She can't order the mandatory because it's not an element of the offense, but she can order the discretionary because they both sustain harm directly and approximately as a result of his offense. That begs the question as to whether or not those damages, alleged damages, are the result of the offense of conviction. And under 371, the offense... But Judge Battani found there were. There were. I mean, that's what we're reviewing. That's correct, and that's why I'm here today. I was asking about the waiver, and I was interpreting that language to go to how proximate it is as opposed to whether you're categorically a victim. Well, I believe... Right on the theory that it had already been established that they're a victim, and we're now looking at damages, and you'd say, well, this isn't the kind of thing, you know, that's different if you run somebody down in the getaway car, to use this clear but different example, than, you know, if you took the money and bought a car and then hit somebody, then you would say, no, you know, maybe it's the cause, but it's not a proximate cause. And so you would say, is one the kind of thing where you would allow restitution and is the other not? But it doesn't have to do with whether you're defined as a victim or not, or does it? Even at the time of the restitution hearing, Judge Bottani inquired of Mr. Morgan whether or not the defense was contesting the allegations of ZC and HM, and Mr. Morgan responded, oh, no, we've always contested those allegations. So I can't speak for what Mr. Fishman said at the time of sentencing. It's unfortunate that something transpired off the record and perhaps was a little bit hyperbolic, but the consistent conduct of defense counsel subsequent to that demonstrates that they always contested and always argued that neither of those individuals were victims and neither of them were harmed by the offense of conviction and, in fact, contested that they had been abused. In part of Mr. Morgan's submission in his supplemental memorandum, he appended documents indicating that, for example, ZC had indicated to the agents back in 2008 and 2009 that Mr. Nizal had not forced himself sexually to her. HM had indicated to the agents that he denied that there was any type of sexual abuse. And now years later, when they realize that there's a monetary component here, they change their stories dramatically. So all of that was before the court and all of that was being hotly contested by defense counsel. So in terms of waiver, I would say with due respect, it didn't occur. And I would also ask the court, respectfully but rhetorically, if what Mr. Fishman said at the time of sentencing somehow waived the issue that there were victims, then query why no one, including the government, either when Morgan filed his documentation or when Morgan made his arguments to the court, did anyone say, wait a minute, you've waived that. They did the contrary. They dealt with it substantively and head-on as though nothing had been said because with all due respect, it's my interpretation. And again, it's unfortunate that we don't have that off-the-record discussion on the record, but that there's no indication of a waiver. I understand that argument and it has some force, but I went and looked at that language, not today but recently, and it struck me that that argument by the government could as easily have been taken as we all know that they're a victim, but we need to argue about even so whether restitution is appropriate, and here it's appropriate for this reason and that reason and the other reason. And you can say, well, no, what they were arguing was that they were a victim, but it isn't exactly in those terms. It's more in the terms of look at how closely related this is. Given the punitive nature of restitution. Is that right or wrong? I'm talking about waiver now still. What I'm saying is given the punitive nature of restitution, it shouldn't be surmised away, and I don't believe that there was a waiver. I understand it shouldn't be surmised away, but you're saying part of the reason that it wasn't waived is that the government treated it as not waived, and I'm questioning that. I put it the other way with due respect. I say that it wasn't waived, and that's why the government treated it as a non-waiver rather than because they treated it as a non-waiver it wasn't waived. I think the conduct of defense counsel was consistent throughout the proceedings below. Okay, thank you. Thank you. May it please the Court. Stephanie Gorgon for the United States. Nizal's argument that Z.C. and H.M. were not victims was waived. It's not reviewable because he intentionally abandoned the argument that he made very clearly in his PSR objections and then withdrew very clearly and on the record at the sentencing hearing. One of the quotes. That relates to something that's off the record. The only thing that the sentencing transcript really shows is that at some point prior to the hearing, the district court was informed of the waiver because she comes out on the bench and says, oh, so I've understood that I think her language exactly is any objections have been resolved or waived or withdrawn. And defense counsel says, that's right, Your Honor, all. A quote from the record is that all of the issues that were pending before this court have been resolved, and that's from 495 of the sentencing. What do you do about the argument that subsequent to that there was all this argument about whether there was a victim? Yeah, that's a reference to record number 779, I believe. And it's a confusing document. I'm not going to back away from that. It's record number 79. It's that restitution memo. And there is a line that says, oh, they were never victims. But Your Honor has probably hit on the best response to that because a page later at 411, he says exactly this. All objections were withdrawn in exchange for a stipulated guideline sentence. And so when he says they're not victims, I think you're exactly right. It's about proximate cause. Is their victimization, is the harm related enough to the crime that we're prepared legally to recognize it? And that's what was argued at the restitution hearing. So even this intervening restitution memo admits that all objections were withdrawn, which includes objections to them being victims, and says that it was in exchange for a stipulated guideline range sentence, which I think is referring to the fact that the prosecution What is preferred then, just so we can move on, what is preserved then, is how proximate it is. Yes. Which isn't really There's a way in which it's not proximate, isn't it? I mean, this is not threatening or abusing someone to keep them from going to the authorities, but instead is abusing them by telling them that they'll turn them in. Right? It's a little bit It's really different, isn't it? It's a little bit of both, Your Honor, and I want to answer this question. Well, the more that it's the former, the more your case is strong, I think. Yeah, that's correct. But it seems to be the emphasis of what the really ugly thing that's going on here is that the people are being abused, but not and the connection to the crime is that the power that they hold over them is that they'll turn them in, and they'll get deported, right? That's the threat that's being held. The PSR, Your Honor, also details threats that you better not talk about this conspiracy because then I'll hurt you. Presumably, that's not the hurt that he's imposing. The hurt that he's imposing is, and then I'll hurt you, but she didn't talk. So, I mean, you see what I'm saying? It's sort of backwards from the normal situation where you would say someone is a victim because you hit them in the getaway car or something. Yeah, I think there are two theories of victimization that were both supported by what happened, and this is not to say that criminal defendants often have poor judgment or aren't necessarily coherent in how they're proceeding, but, I mean, you're right. As far as H.M.'s victimization, it tended to be a more, what we might think of as a more typical abuse in the course of covering up the conspiracy, right? And that was very well laid out in the PSR, throughout the PSR, paragraphs 14, 15, 17, and 18,  How does molesting the child further the conspiracy? How does that help get away with marriage fraud? To keep them quiet about the fraud. And there were explicit threats. They have no interest in not being quiet about the fraud. It's not like they're about to go and report. I thought the whole threat was that the perpetrator might report it. See the problem I'm having? I think I do, Your Honor, but I think what you see from, and this is, and I want to back up, and I don't want to concede that this was preserved, because even this, if it was kind of mentioned in this one filing, wasn't brought up at the restitution hearing. The PSR detailed the fact that this was part of the cover-up, and this was not objected to or contested at the restitution hearing. And this court... Oh, but you were distinguishing between whether they were a victim, just victim with a V, or whether it was connected closely enough, because there was argument in these filings, right? At the restitution hearing, Your Honor, what happened was the district court said, the prosecutor said, we're here to determine the amount. The defendant didn't dispute that. The defendant actually only kind of quibbled with the qualifications of one of the experts that was there to help determine the amount, and they didn't go after the facts in this case, not even at the hearing. And prior to that, at the sentencing, the district court said, I'm going to set restitution. We're having a hearing to determine how much, and I want the parties to give me calculations and figures. And you can find that at 502 and 498 of the record. And the district court justified a guideline-range sentence for what the district court felt was, in her words at 499, horrendous conduct. And she said, the reason I'm justifying it is because we know that you've agreed to restitution, and I'm going to get you out so you can start paying that restitution to the victims. That's all in the transcript. So there's nothing, whatever is off the record, there's enough on the record to find waiver here, as far as whether they're victims. If all that happened is the district court came into the courtroom and said, well, I understand your objections have been resolved, I don't see how in the world that suggests anything happening off the record. It seems much more likely that the judge's case manager, that lawyers had told the case manager, and the case manager told the judge, or sometimes the call comes directly to the judge's office, or sometimes the probation officer communicates with the judge. But it doesn't sound like there was anything involving, I don't know why one would draw the inference that anything had happened off the record involving any of the parties. I agree with you, Judge Gibbons. I think that my colleague is inferring that. There was discussion that was of a nature of how proximate the cause was. And there's a filing, isn't there, a memo or something like that that goes into that? I want to be very clear that I'm not aware of a discussion off the record about the proximity of the cause. I'm just saying you couldn't. We're talking about different things. Okay. I understand that there is the statement in the record that all these things have been resolved. But you were further supporting that by saying, or they say, after that there was discussion of this issue, suggesting that it wasn't waived. And you said, no, that's a discussion of a different issue, and the different issue you suggested it was a discussion of was how closely connected it was. But now you're backing off of that and saying, oh, no, the only discussion was how much harm they suffered, not anything about how related it was to the crime. Right. Was there subsequent to the colloquy that Judge Gibbons just referred to, was there either motions practice or hearing arguments that went to the connectedness to the crime as opposed to how bad the harm was, which is arguably conceptually a little different, right? I mean, how much they suffered is different from how connected their suffering was to the crime. Are you with me? I am with you, Your Honor. Okay. So what's the answer to that? The answer is that when you look at the record, it was about how much harm they suffered. And at the restitution hearing, the only thing defense counsel did was quibble with the adequacy of the expert's qualifications or estimates as to what dollar figure to put on that harm. The only thing I meant to do, and maybe I shouldn't have even tried, is trying to understand what defense counsel was trying to do with that restitution memo, which does have this weird kind of one-off undeveloped thing about, well, they're not really victims. Did you say that was docket entry 79? Yes. Yes, that's right. It's noted as a sealed document on the docket sheet. I don't know if we've otherwise obtained it or not. Oh, okay. Yeah, it was initially filed unsealed, and then just reading the record, I can see that the district court was very unhappy it was. We may have it. I don't remember. It would include a page ID 411, because that's where he says all objections have been withdrawn for that. Well, then probably we've gotten it unsealed. There's one thing I want to mention about that, Your Honors. When he says, even at that stage, that all objections have been withdrawn in exchange for this stipulated guideline range sentence, the guideline range sentence that everyone agreed to by the time we get to sentencing, that reflected the fact that H.M. and Z.C. were victims of the scheme. And what I mean is when you look at the objections that were made and then withdrawn, he also objected not just to them being called victims, but he objected to two paragraphs, paragraphs 25 and 27, which started applying enhancements to that guideline range. One was a plus two for using a minor to cover up. One was plus two for obstruction through the abuse, right, to cover it up. And so when he says, well, I withdrew all the objections and I'm agreeing to the guideline range, he is agreeing that he abused Z.C. and H.M. in order to get that guideline range sentence of 27 to 33 months. And so his argument now on appeal that, well, the only thing I was really withdrawing was an objection to the guideline range calculations, even if we accepted that, which the record doesn't support. Well, you withdrew your objection to the guideline calculations, which reflects you can't get to that guideline range without agreeing that they were abused in the furtherance of this scheme. And so I think that's an important point. If I ask just an abstract question, just past all the waiver issues and everything, so I understand what the law is a little bit, but would it be coherent to include as a victim somebody who is oppressed or molested or hurt because there's a threat that they will be turned in for that very crime? Does that sound a little like not what we would call a victim? Do I understand it? Let me repeat back what I think the question is, that H.M. is hurt by the defendant. To prevent H.M. from going to the authorities about that abuse, the defendant threatens to hurt him further. I would say that to prevent the person from going to the authorities would strike me as a victim. I think people would think that's a victim of the crime because they're covering it up. It's like being hit by the getaway car. Even more direct than that. But I'm asking a different kind of question. What if I'm using the fact that you committed the crime to extort money from you? I will go to the authorities and turn you in if you don't give me money. That doesn't sound like the person is a victim of the crime. It sounds like you're using the fact that he committed the crime to extort money from him. That wouldn't be a victim of a crime, would it? Whether you did it cooperatively or conspiracy or whatever, you both are aware of this crime, and you both had some sort of part in it, and you go to that person and say, I'm going to turn you in unless you give me money. That's not the normal everyday person's use of the word victim. Is that true? Do you see the difference? I do, Your Honor. And I think my instinct is to agree with that, that the victimization there is from the extortion attempt. It's not directly, maybe it's direct, but not proximately caused by the initial bad conduct. That's the kind of underlying concern I have about this case. You've got to admit it smacks of that, right? Well, not with H.M., Your Honor. The real honest-to-goodness threat there is that they'll turn him in for marriage fraud, and they'll get deported. And what makes this case different, Your Honor, is that H.M. is the one. H.M. was not agreeing. He didn't commit marriage fraud. H.M. is the minor child. And, in fact, this is a factual error. The way that he's able to get away with that is because he can threaten his mother with getting them both deported. That's true. The mother, however, her restitution amounts, I should say it was very modest, and it was for wages that were withheld when she was made a slave. Because he dangled over, well, I spent $9,000 on you to arrange this, and now you owe me, and so he made her work for free for years. So if the restitution amount had been related to maybe the sexual assaults, maybe it would be a little tougher, but I think here you have more of a single line of reasoning, right, when you're justifying the restitution for the mother, and then H.M. was not a co-conspirator. He was a minor child. And one thing that I had factually incorrect, and I apologize, is that H.M. apparently was already in the country when the marriage fraud occurred. It was the other children in Lebanon that Zizi was trying to get into the country. So anywhere my brief suggests otherwise, that's actually the timeline there. And one thing I wanted to mention, and this is if you were to get to the merits of the case, my colleague says in his reply, well, no case involving a 371 charge has ever found restitution to apply in this kind of circumstance, and that's just not true. The case that we're all discussing throughout the briefs, the Senga case from the Ninth Circuit, is a 371 case, and it is a case where discretionary restitution was awarded. And there, one other way my colleague tries to distinguish that case is he says, well, the defendant in Senga admitted to some things, and that distinguishes what happened here. But there are two points I wanted to make as to that, Your Honors. One is that what the defendant said in Senga, and this is at 1334 of that decision, is only that he smuggled the victim in to be a maid, not to be a slave. So it's not like he even admitted to criminal conduct in furtherance of the scheme that hurt her. And the second point I want to make is that this Court's already decided in Sospi that a fact underlying a restitution order or justifying a restitution order is not an apprentice-style fact. It is not one that has to be decided by a jury or admitted by the defendant. And that's kind of a premise that my colleague has kind of woven throughout his briefing, which is that he, the defendant, had to have admitted to doing these things in order to be on the hook for restitution, and that's just not the law. And to the extent, Your Honors, have any concerns about the connection between the abuse of H.M. and the cover-up of the offense, that was laid out throughout the PSR, and all those paragraphs I've already mentioned, and he didn't contest it. And this Court's already said. I see my time is up. I really appreciate it, Your Honors, and we do ask that you affirm the District Court's restitution order. Thank you. Mr. Wise. Thank you. If I could respond briefly to Judge Gibbons, your concern or interpretation of what transpired between the parties, counsel and the Court, which gave rise to Judge Battani when she took the bench, indicating what her understanding was. We have no idea how she acquired that understanding, on the record. And what we do have is the conduct that transpired subsequent to that. And even Judge Battani, both at the sentencing and at the restitution hearing, had issues about what constituted this global agreement that was articulated at the sentencing. And it seems that the government retracted a little bit at sentencing and further retracted and said it wasn't an agreement, maybe it was an understanding. So what the government is asking the Court to do is on the basis of surmise and conjecture, make a determination of waiver. And our position is because restitution is punitive in nature, it shouldn't be subjected to just simply surmise. There has to be a knowing, intelligent determination for that. Not only suggestion-wise, you suggested that something happened involving counsel off the record. And my only reason for bringing that up is that that inference, it's just as likely that didn't happen as that it did. All we know is that the Court acquired some knowledge off the record. And I agree with Your Honor. I have no idea how that came or how it got to the Court. I didn't mean to suggest that I was making some finding about that. I'm just saying, you know, that's at least as likely as your surmise. Thank you. If I could respond to Your Honor's concerns about the threat and how that interweaves with the offense of conviction and how under 3663, one gets restitution out of that. First of all, I have the conceptual problem of if we accept the theory that both Nassau and Z.C. agreed to have this false marriage, then both of them were criminals and both of them engaged in criminal conduct. So for one criminal to say another, you don't do this and I'm going to turn you in, you're going to turn in yourself as well. It's sort of like if I sell drugs to Your Honor and you don't pay me, and then I'm going to threaten to turn you into the authorities and say you didn't pay me for the drugs that I sold you, it'd be like leaning into a left hook. In terms of Sengwa, which counsel mentioned, that Ninth Circuit case, there was a... You're saying it's unlikely someone would do something like that? It doesn't hold true and it's consistent with the argument... My questioning was leading towards the idea that even if he did that, it wasn't related, but you want to say that's not a good argument. I'm not sure what you're arguing because it seems to be going against your position. In terms of trial counsel agreeing that they were victims, and I appreciate that you may not have the sealed documents, but in defense... We'll have sealed documents if they're in the record. They're in the record. Pardon? If they're in the record, we can get them. Yes. And again, everyone keeps... Not sealed against us. No. In terms of pages 410 and 411 of that document, defense counsel is still disputing whether or not these individuals are victims. And finally... We can look at it and see whether that's going on. And finally, just if I may apologize for going a moment over, the Senga case also had a 1324 allegation in terms of harboring and smuggling aliens. And the defendant at the time of the plea colloquy admitted that he forced the victim to have sex before he would bring her in. So it was intertwined with the factual determination. We can look at that as well. All right. Any additional questions? Thank you very much. We thank you both for your argument. We'll consider the case carefully. Thank you.